[No. F006149. Fifth Dist. Dec. 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
EMILIO VALDEZ MARQUEZ, Defendant and Appellant.

COUNSEL

Marisa Nayfach, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jane N. Kirkland and Susan J. Orton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION.

THE COURT.*—Appellant, Emilio Valdez Marquez, was charged by information with two counts of sale of heroin (Health & Saf. Code, § 11352) and one count of possession of heroin for sale (Health & Saf. Code, § 11351). Before trial one count of heroin sale was dismissed. Following trial by jury, appellant was convicted of the two remaining counts. The trial court sentenced appellant to state prison for the middle term of four years for the heroin sale plus a consecutive one-year term for possession of heroin for sale. Appellant filed a timely notice of appeal.

FACTS

In early September 1984, Sergio Santos, a Tulare County narcotics detective, entered into an agreement with Robert Hernandez, a heroin user, by which Hernandez would work as an undercover purchaser of heroin in return for Santos's "help" in some pending misdemeanor cases. Santos had received numerous calls regarding suspected heroin sales at appellant's home in Earlimart. Santos knew appellant had been convicted in 1978 for heroin sale.

On September 12, 1984, Santos directed Hernandez to meet him on the outskirts of Earlimart. There, Santos strip searched Hernandez, determined that he had no heroin in his possession and drove him to appellant's residence. Santos instructed Hernandez to go to appellant's door, ask for "Boogie," an older, heavy-set man, and tell him that he wanted to buy some

---

*Before Woolpert, Acting P. J., Martin, J., and Vartabedian, J.†

†Assigned by the Chairperson of the Judicial Council.

heroin. Santos and another agent named Conley then watched as Hernandez went to appellant's door.

At appellant's door, appellant answered and responded that he was "Boogie." Hernandez then asked appellant if he could buy a $20 bag of heroin. Appellant said "hold on," reached into his pocket, and took out a small orange container from which he removed a tinfoil "bindle" later found to contain heroin. Hernandez saw six or more bindles inside the container. Hernandez gave appellant the $20, took the bindle, and asked appellant if he could return for more bindles. Appellant replied that he could. Hernanez immediately walked with the bindle to Santos's car parked nearby and gave it to Santos. Hernandez, who had never seen appellant before, later picked out appellant's photograph from a lineup presented by Santos. Santos then obtained a warrant for appellant's arrest.

On November 20, 1984, Santos met with Tulare County Narcotics Detective Joe Landin in order to arrange a possible second controlled heroin purchase from appellant before appellant's arrest. Santos furnished Landin with $40 in recorded county funds and took him to appellant's residence to request a heroin purchase. Landin went to appellant's door, asked for "Boogie," and appellant acknowledged that he was "Boogie." Landin then asked to buy some heroin; appellant said that he did not have any, as he had just sold to a woman sitting in a pickup in front of appellant's house. Landin then signaled Santos to arrest appellant, which Santos did. Santos patted appellant down and found a plastic baggie filled with 18 tinfoil bindles plus a plastic container with one bindle. Appellant also had about $500 in cash, of which 14 bills were $20's. Santos did not count the money at that time. A criminalist from the California Department of Justice later determined that the substances seized from appellant constituted sufficient heroin for personal use. There was no evidence that appellant was a user of heroin or any other narcotic substance.

### DEFENSE

Appellant testified in his own behalf. He denied even having seen Robert Hernandez before the preliminary examination. He admitted Landin's visit to his house on November 20, but maintained that he possessed no heroin at the time of his arrest by Santos. He claimed that he possessed more than $800 in cash on his person when arrested, but contended that it represented savings from his Social Security income. He admitted his prior conviction.

### DISCUSSION

During cross-examination, the deputy district attorney asked appellant if he had previously been convicted in 1980 for sale of heroin, one of the

offenses with which he was presently charged. Appellant admitted the prior conviction. Appellant's trial counsel did not object to the prosecutor's questions in this regard and did not then, or at any earlier time, make a motion to suppress evidence of appellant's identical prior. ▮ Appellant contends in this appeal that trial counsel's failure to object to impeachment of appellant with his prior conviction deprived appellant of the effective assistance of counsel.

In *People* v. *Pope* (1979) 23 Cal.3d 412 [125 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1], our Supreme Court stated: "To render reasonably competent assistance, an attorney in a criminal case must perform certain basic duties. [Citations.] Generally, the Sixth Amendment and article I, section 15 require counsel's 'diligence and active participation in the full and effective preparation of his client's case.' [Citation.] . . . If counsel's failure to perform these obligations results in the withdrawal of a crucial or potentially meritorious defense, ' "the defendant has not had the assistance to which he is entitled.' " [Citation.]" (*Id.* at pp. 424-425, fns. omitted.) In the instant case, failure of trial counsel to object to the introduction of appellant's prior conviction for impeachment purposes did not result in the withdrawal of a potentially meritorious defense. ▮ However, in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144], the court further stated on this subject: "We conclude that in cases in which a claim of ineffective assistance of counsel is based on acts or omissions not amounting to withdrawal of a defense, a defendant may prove such ineffectiveness if he establishes that his counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. (*Pope, supra,* 23 Cal.3d at p. 425; *People* v. *Watson* (1956) 46 Cal.2d 818, 836. . . .)" ▮ Thus, we must determine here whether appellant's trial counsel failed to perform with reasonable competence and, if so, whether it is reasonably probable a determination more favorable to appellant would have resulted in the absence of counsel's failings.

In *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], the Supreme Court addressed the question of admissibility of prior felony convictions for impeachment purposes in light of article I, section 28 of the California Constitution, adopted by the enactment of Proposition 8 by the electorate in June 1982. There, the court stated: "The legislative and judicial history of [Evidence Code] sections 352 and 788, the circumstances under which article I, section 28, was enacted, the language of the enactment —concededly ambiguous—as well as certain policy considerations convince us that section 28 was not intended to abrogate the traditional and inherent power of the trial court to control the admission of evidence by the

exercise of discretion to exclude marginally relevant but prejudicial matter — as, indeed, is provided by Evidence Code section 352.[4]

"A further issue—tendered by the nature of defendant's convictions and subdivision (d)'s recognition that only relevant evidence is admissible—is the nature of the prior convictions which may be used for impeachment of witnesses in criminal cases. We shall hold that—always subject to the trial court's discretion under section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. On the other hand, subdivision (d), as well as due process, forbids the use of convictions of felonies which do not necessarily involve moral turpitude." (*Id.* at p. 306.) Footnote 4 states: "Section 352 reads: 'The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*Ibid.*) *Castro* was filed in March 1985, nearly four months prior to the trial in the instant case. *Castro* held possession of heroin for sale, analogous to appellant's prior conviction here, involves moral turpitude—though the trait involved is not dishonesty but, rather, the intent to corrupt others. (*Id.* at p. 317.) ■ Even so, appellant's prior, sale of heroin, was identical to one of the present charges against him, and trial counsel's failure to object to the use of such prior for purposes of impeachment constitutes a failure to perform with reasonable competence. The question of admissibility as to prior convictions was far from settled by Proposition 8 in light of the many challenges it faced in the courts prior to the filing of the *Castro* decision. Moreover, under these circumstances, we cannot perceive of a rational tactical purpose in failing to object to the impeachment questions. ■ The question remains whether a result more favorable to the appellant would have resulted in the absence of counsel's failings.

■ In the recent decision in *People* v. *Collins* (1986) 42 Cal.3d 378 [228 Cal.Rptr. 899, 722 P.2d 173], the Supreme Court has set forth the procedure to be followed in appellate review of *Castro* error. The court stated: "2. If the defendant did testify, the appellate court should make a preliminary determination of the probable effect of the prior convictions, taken together, on the outcome of the trial. The purpose is to screen out those cases in which the admission of the prior convictions probably did not harm the defendant in any event. The appellate court is able to make this determination because it need not speculate on what the defendant's testimony would have been: the record discloses the content of both the direct testmony of the defendant and any cross-examination of or rebuttal to that testimony. The court can therefore assess the probable effect of the impeachment on

that testimony. In turn, the court can appraise the probable effect of that testimony on the verdict, taking into account such factors as the strengths and weaknesses of the prosecution's case, the nature of the defense, and the potential persuasive force of the defendant's testimony in light of the other evidence put before the jury. . . .

"If the appellate court concludes it is reasonably probable that a result more favorable to the defendant would *not* have been reached in the absence of the *Castro* error—i.e., that the admission of the prior convictions did not change the outcome—it should hold the error harmless.[12]" (*Id.* at pp. 390-391.) Footnote 12 states: "Although stated negatively, this is the familiar test of *People* v. *Watson* (1956) 46 Cal.2d 818, 836. . . . A higher standard of review may be required if the defendant waives his right to trial by jury because of *Castro* error. A defective waiver of the right to jury trial is reversible per se. (E.g., *People* v. *Holmes* (1960) 54 Cal.2d 442. . . .) The appellate court should therefore consider whether the same rule applies when a defendant is induced to waive such right by an erroneous decision to allow his impeachment by prior conviction." (*Id.* at p. 391.)

In our view, it is *not* reasonably probable that a result more favorable to appellant would have resulted in the absence of the *Castro* error, or as more correctly stated in the instant case, in the absence of trial counsel's failure to raise by appropriate objection the *Castro* issue. As set forth in our statement of facts (*ante*), the evidence against appellant was substantial. On September 12, 1984, Hernandez made a controlled "buy" from appellant while being observed by two narcotics officers. The product of the "buy" was received in evidence and verified by expert testimony as heroin in a usable amount. On November 20, 1984, Detectives Santos and Landin attempted another heroin purchase from appellant at the same address. When appellant stated he had no heroin, he was arrested and a search of his person produced 19 separately wrapped bindles, later tested positive as heroin, and introduced into evidence. Against this evidence, appellant testified on his own behalf. He denied the September 12 incident in its entirety, i.e., it never happened. He admitted Landin attempted to purchase heroin from him on November 20, but denied the 19 bindles of heroin were on his person when searched. In other words, for the jury to have believed appellant's testimony, it would have to have disbelieved and rejected the testimony of Hernandez, Santos and Landin in its entirety. Moreover, it would have to believe these three prosecution witnesses and Agent Conley, who did not testify, conspired to fabricate this entire scheme, both incidents, and falsified a declaration to support their request for a search warrant, and each offered perjured testimony under oath at trial, in order to get appellant for some undisclosed reason. In view of the weight of the evidence against appellant and his incredible testimony in response, we conclude, as we have

stated, it is not reasonably probable that a result more favorable to appellant would have resulted in the absence of trial counsel's failure to raise the *Castro* issue. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Fosselman, supra,* 33 Cal.3d at p. 584.)

The judgment is affirmed.