Filed 2/21/14  P. v. Love CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMAL ANDRE LOVE,<br><br>    Defendant and Appellant. | E056356<br><br>(Super.Ct.No. RIF1105819)<br><br>**OPINION** |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Melissa Mandel and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

According to the alleged victims, defendant Jamal Andre Love, along with two other men, both armed with guns, committed a terrifying home invasion robbery. The robbery failed because the victims fought back, using a knife, a miniature baseball bat, and their bare hands. The next morning, defendant was admitted to a hospital with some 15 stab wounds.

According to defendant, however, he went to the victims' house because he had heard that he could buy cocaine there. Victim Roy Alba invited him in and showed him some cocaine. When defendant refused to buy it, Roy and his father attacked him.

After a jury trial, defendant was found guilty on:

Count 2: First degree burglary (Pen. Code, § 459);

Count 6: Simple assault (Pen. Code, § 240) as a lesser included offense of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)); an armed principal enhancement (Pen. Code, § 12022, subd. (a)(1)) was found not true.

Defendant was acquitted on:

Count 1: Robbery in concert (Pen. Code, §§ 211, 213, subd. (a)(1)(A));

Counts 3-4: Forcible false imprisonment (Pen. Code, § 236);

Count 5: Making a criminal threat (Pen. Code, § 422);

Counts 7-9: Assault with a firearm (Pen. Code, § 245, subd. (a)(2)).

In a bifurcated proceeding, defendant admitted two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)).

As a result, defendant was sentenced to a total of eight years in prison, along with all the usual fines, fees, and conditions.

Defendant now contends:

1. The trial court erred by excluding evidence that Roy Alba had previously been found in possession of multiple baggies of cocaine.

2. The prosecutor committed misconduct by stating, in closing argument, that there was "no evidence" that Roy was a drug dealer, when she knew that the trial court had excluded evidence that Roy had previously been found in possession of multiple baggies of cocaine.

3. There was insufficient evidence that defendant intended to commit a theft to support his conviction for burglary.

We will conclude that defendant's first two claims of error have been forfeited. We will reject the third. Hence, we will affirm.[1]

I

FACTUAL BACKGROUND

Jesus Alba and his wife Rosalba Alba lived on Buxton Avenue in Moreno Valley. They slept in an upstairs bedroom. Their 19-year-old son, Roy Alba, had a separate bedroom upstairs. Jesus's 78-year-old father, Manuel Alba, had a bedroom downstairs.

---

[1] Defendant has also filed a related petition for writ of habeas corpus. (*In re Love*, case No. E060322.) We denied defendant's request to consolidate the two cases. Thus, we will resolve the habeas case by separate order.

On December 8-9, 2011, Roy was awakened by the doorbell. He looked out a window and saw two men across the street. They seemed to be going away, so he went back to sleep.

Around 2:30 or 3:00 a.m., Manuel awoke when two men, carrying flashlights, came into his room. One of them made him lie face down on the bed, tied him up with a cord from his own computer, and blindfolded him with his own t-shirt. He then heard them going upstairs.

Roy awoke when two men told him, "Wake up. Wake up." One of them was holding what felt like a gun to his head. They rummaged through his drawers and repeatedly asked, "Where's the money?"

One of the men sat on top of Roy and started to tie his hands behind his back with his own "cell phone cord." Roy managed to get his hands free, then turned partway around and poked the man in the eyes and nose. He grabbed a small souvenir bat that was next to his bed and tried to hit the man with it.

Meanwhile, Jesus awoke because he heard voices coming from Roy's room. He went into the hall and called, "Roy, are you there?" Then he yelled to Rosalba to call the police.

Two black men came out of Roy's bedroom. They both had guns. They pointed their guns at Jesus and Rosalba and said, "If you call the police, we're going to kill you."

Jesus retreated into his bedroom and got a six-inch folding knife. Rosalba grabbed one man's gun hand; he knocked her to the floor. Jesus ran back out into the hallway and

stabbed one of the men in the face. The two men ran downstairs. Rosalba got her cell phone, ran into a closet, and called 911.

Jesus ran into Roy's room. He saw a third man on top of Roy. At trial, Jesus, Rosalba, and Roy all identified defendant as this third man. Defendant and Roy were "struggling." Jesus stabbed defendant in the back. Defendant did not get off of Roy, so Jesus kept stabbing him. Defendant still did not get off Roy, so Jesus pulled him off. Defendant fell on top of Jesus. This caused the knife to close, cutting Jesus's hand. Roy hit defendant with the bat.

Defendant "stumbled out" of the bedroom and headed toward the stairs; Roy chased him. Roy pushed defendant down the stairs and fell down the stairs with him. Roy kept hitting defendant with the bat until it broke; then Roy tried to stab defendant with the jagged end of the broken bat. Rosalba grabbed defendant's jacket, hoping to detain him until the police arrived. In the struggle, defendant's cell phone fell on the floor, but he managed to open the front door and "tumble[] out."

Rosalba saw defendant get into a red pickup truck about two houses away on a cross-street called Heath Court.

Rosalba noticed that a kitchen window, which she had shut before going to bed, was open, and the screen had been removed. "Everything [in the kitchen] was opened," even the dishwasher. Later, Rosalba also realized that approximately $100 was missing from the kitchen. Roy found that $200 was missing from his wallet; his cell phone and a gold chain were also missing.

5

At 3:00 a.m., the police arrived. They found a large patch of blood in the front yard. They determined that the dropped cell phone belonged to defendant. Phone records indicated that defendant had been on the phone with a contact named Jason Crum from 12:20 a.m. to 2:20 a.m. Earlier, defendant had made several calls to another contact named Duke. The police determined that Jason's number had also called Duke's number that same night. They found the phone with Duke's number at a house on Heath Court.

At 8:40 a.m., defendant was admitted to a hospital. He had 15 stab wounds, to his face, head, arm, stomach, and back.

Defendant testified that, on December 8-9, 2011, he was hanging out with Jason Crum and Victor "Duke" Rice at the Heath Court house. Defendant got drunk on champagne and tequila. Jason told him he could buy cocaine at the Albas's address.

At 1:00 or 1:30 a.m., defendant went over to the Albas's house to try to buy cocaine. He thought someone in the house was awake, because he could see light through a second-floor window.

Defendant knocked on the door; Roy opened it. Defendant said he wanted to buy cocaine and explained that he had heard about Roy through Jason. Roy led defendant up to his bedroom and showed defendant a bag of cocaine. Defendant tasted it and found it unsatisfactory. When he said he did not want it, Roy got upset. They had "words." Suddenly, Jesus started stabbing defendant, while Roy hit him with a bat.

Defendant "crawled out and got to the stairs." He fell down the stairs with Roy. Someone grabbed him, but he managed to run out the door. He passed out for about 10

6

minutes in the front yard. He got in his car and started to drive to the hospital, but he passed out again, so he drove back to the Heath Court house. When he got there, he did not ask anyone to call 911 or to drive him to the hospital; he only asked them to call his wife.

He insisted that he went to the Alba house between 1:00 and 1:30 a.m., even though his phone records showed that he was on the phone at that time. He denied seeing any police cars after he left.

Roy denied ever selling illegal drugs. He also denied having any illegal drugs in the house that night.

II

EXCLUSION OF EVIDENCE OF ROY'S POSSESSION OF COCAINE

Defendant contends that the trial court erred by excluding evidence that victim Roy Alba had previously been found in possession of multiple baggies of cocaine.

A.    *Additional Factual and Procedural Background*.

According to the parties' representations below, in 2010, Roy had been arrested for possession of cocaine. However, he had completed diversion,[2] and his case had been dismissed.

---

[2]    During motions in limine, defense counsel represented that Roy's diversion was pursuant to Penal Code section 1000 et seq. Later, however, at sentencing, she stated that it was pursuant to Proposition 36.

Under either statutory scheme, subject to certain exceptions not applicable here, a defendant who successfully completes drug diversion may indicate in response to "any

*[footnote continued on next page]*

The prosecution filed a motion in limine to exclude Roy's "prior arrest" as irrelevant.  (Capitalization altered.)

At the same time, defense counsel filed a motion in limine to admit Roy's "drug history."  She argued:  "Mr. Roy Alba did complete . . . [d]iversion.  However, even in cases where a divertee has successfully completed diversion, the divertee still must disclose the conviction on applications for state licensure and on applications to become law enforcement.  To allow Mr. Alba to deny any drug conviction on the stand is tantamount to suborning perjury."  (Bolding omitted; capitalization altered.)

At the argument on the motions,[3] the trial court began by observing that, under *People v. Castro* (1985) 38 Cal.3d 301, simple possession of cocaine is not a crime of moral turpitude and hence could not be used for impeachment.  It continued:

"[THE COURT:]  But . . . apparently, at the time of Mr. Alba's arrest, the drugs were found in multiple baggies and there w[ere] empty baggies as well.  So you are thinking some evidence of sales; is that correct?

"[DEFENSE COUNSEL]:  Yes."

---

*[footnote continued from previous page]*
question concerning his or her prior criminal record" that he or she was not arrested for or convicted of the drug offense.  (Pen. Code, §§ 1000.4, subd. (a), 1210.1, subd. (e)(3).)

[3]      The parties and the court had already discussed the issue off the record in chambers.  At defendant's request, we ordered the preparation of a settled statement about what happened during the off-the-record discussion.  According to the settled statement, "[e]verything of substance that had been discussed [off the record] was readdressed on the record."

The court then asked defense counsel to "explain [her] position and make [her] record[.]"

She argued: " . . . I understand that Mr. Roy Alba's [diversion] was successfully completed. However, even i[n] cases where someone successfully completes diversion, they still have to disclose the conviction on certain applications such as an application for a state license or if they . . . apply to become a peace officer. So, by analogy, I'd argue that testifying under oath at a trial is of even . . . greater importance that he be honest as far as his priors. And, I guess, maybe a public policy argument that it's more important for him not to perjure himself — if he has to disclose it for a state license, he should have to disclose it for testimony under oath."

The trial court then ruled that the evidence was not admissible to impeach; it explained that it was bound by *Castro*. It continued:

"Now, if it comes up during the course of the trial and something happens and you think it comes up in a different context, fine, I'll be happy to address it at that point in time. Now, let's assume your client or somebody who is percipient about this testifies . . . , 'Well, why did you go to Mr. Alba's house?' 'Well, we'd bought drugs before,' or, 'It was our understanding he had drugs and we went there to buy drugs, and we ma[d]e contact with him because of that.' Then that would probably be admissible because that would explain why they're not [*sic*] there."

There was some discussion of whether defense counsel could ask Roy if there were drugs in his home at the time of the crimes. The trial court ruled that she could. Then defense counsel asked:

"[DEFENSE COUNSEL]: But I'm not allowed to ask about the conduct from the prior at all?

"THE COURT: Correct. There's really a couple [of] reasons. One, you have the Supreme Court case — in effect you are actually inferring that he had something two things before . . . . [¶] . . . [¶] . . . Now, you have it again on this occasion. Generally, we do not allow that inference[,] he had it before he has it again."

B.    *Analysis*.

Defendant argues that evidence of the conduct underlying Roy's prior arrest (as opposed to the arrest itself) was admissible to impeach Roy, as well as to support defendant's claim that he went to the Alba house to buy cocaine.

The People respond that defense counsel forfeited defendant's present contention by failing to make an adequate offer of proof.

"On appeal, we may not reverse a judgment for the erroneous exclusion of evidence unless '[t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means.' (Evid. Code, § 354.)" (*People v. Vines* (2011) 51 Cal.4th 830, 868-869.)

Here, the substance of the evidence was reasonably clear. Both sides agreed that Roy had been arrested for possession of cocaine. The trial court was also made aware

10

(presumably during the off-the-record discussion) that Roy had been found with cocaine in multiple baggies and/or empty baggies. This was sufficient to permit us, as well as the trial court, to evaluate the admissibility of this evidence under any given theory of relevance.

The People argue that defense counsel "did not make an offer of proof as to who could be called to testify to the underlying conduct or what that person would testify to specifically." They also argue that defense counsel "failed to present the court with police reports or other evidence of the conduct underlying Roy's conviction and failed to call any witnesses to testify, in a 402 hearing, as to the asserted facts underlying the conviction." (Fn. omitted.) This level of detail, however, was unnecessary to a determination of whether the evidence was admissible.

Defendant's theory of relevance, however, was never made clear.[4] Defense counsel focused on arguing that the evidence was *not inadmissible* under the applicable diversion statute. This begged the question of why exactly it was *admissible*. Nevertheless, the trial court, on its own, raised the question of whether the evidence was admissible to impeach. It noted that, under *Castro*, a conviction for simple possession would not be admissible to impeach; however, it also noted that there was some evidence that Roy actually committed possession for sale. It then invited defense counsel to "explain [her] position and make [her] record[.]" Even then, defense counsel simply

---

**4** According to the settled statement, even during the off-the-record discussion, "[I]t was somewhat unclear as to why defense counsel . . . wanted to introduce [the] evidence . . . ."

11

reiterated that the evidence was not inadmissible because of the applicable diversion statute. She focused on the conviction, as opposed to the underlying conduct; for example, she argued that, because the conviction would have to be disclosed in an application to become a peace officer, "by analogy," it should have to be disclosed at trial. The trial court therefore ruled that it was bound by *Castro*.

On this record, the trial court had no reason to think it was being asked to rule on the admissibility of the underlying conduct — as opposed to the arrest or the conviction — to impeach. It had raised the applicability of *Castro*; it had noted that the underlying conduct involved sales; and it had given defense counsel an opportunity to address both points. This she signally failed to do.

In this appeal, defendant argues that "[s]pecific instances of conduct involving moral turpitude are admissible for impeachment." He also argues that "'[p]ossession of drugs for sale . . . is conduct involving moral turpitude.'" Defense counsel, however, failed to articulate either of these arguments below.

At one point, she did ask, "But I'm not allowed to ask about the conduct from the prior at all?" Merely asking this question, however, fell far short of making known the purpose and relevance of the excluded evidence. Thus, defense counsel forfeited any claim that the evidence was relevant and admissible to impeach Roy.

Defendant also argues that the evidence was relevant and admissible as character evidence, to show that Roy had sold cocaine in the past and hence that defendant might be telling the truth when he claimed that this was a drug deal gone bad. (See Evid. Code, § 1103, subd. (a)(1) [criminal defendant can introduce specific instances of conduct of the victim as evidence of other conduct in conformity therewith].) Once again, however, defense counsel never articulated this theory of relevance below. The trial court did acknowledge that it might become applicable, but only if defendant claimed that he went to the Alba house to buy drugs. Defense counsel did not make any offer of proof that defendant would so testify. Even more important, the trial court specifically refused to rule on this theory in limine; it stated, "Now, if it comes up during the course of the trial and something happens and you think it comes up in a different context, fine, I'll be happy to address it at that point in time." Defense counsel never reopened the issue during trial.[5] Thus, defense counsel also forfeited any claim that the evidence was relevant and admissible to corroborate defendant's testimony.

## III

## PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor committed misconduct by stating, in closing argument, that there was "no evidence" that Roy was a drug dealer, when she

---

[5] After Roy testified, he was excused subject to recall, so defense counsel could have reopened the issue as late as after defendant testified.

13

knew that the trial court had excluded evidence that Roy had been found with cocaine in multiple baggies (see part II, *ante*).

A.  *Additional Factual and Procedural Background*.

During her rebuttal closing argument, the prosecutor stated:  "Roy Alba is not a drug dealer."  "There's absolutely no evidence, no evidence at all to support that Roy Alba was a drug dealer other than what the defendant told you."  Defense counsel did not object.

B.  *Analysis*.

"A prosecutor's conduct violates the federal Constitution when it infects the trial with such unfairness as to make the resulting conviction a denial of due process.  Conduct by a prosecutor that does not rise to this level nevertheless violates California law if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.  [Citations.]"  (*People v. Whalen* (2013) 56 Cal.4th 1, 52.)

"[T]he term prosecutorial 'misconduct' is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error."  (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

"'"[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion — and on the same ground — the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.  [Citation.]"' [Citations.]"  (*People v. Pearson* (2013) 56 Cal.4th 393, 426.)

Here, defense counsel did not object to the asserted misconduct. Defendant argues that the trial court's earlier ruling excluding the evidence of Roy's possession of cocaine made any objection futile. In part II, *ante*, however, we concluded that any error in excluding the evidence was not reversible, in part because defense counsel simply never argued that the evidence was relevant to show that Roy was a drug dealer. The trial court affirmatively indicated that it would be willing to reconsider the issue if defendant claimed that he went to the Alba house to buy drugs. We cannot say that, if defense counsel had objected that the excluded evidence tended to show that Roy was a drug dealer, and hence that the prosecutor's closing argument was misleading, the trial court would have overruled that objection out of hand. We therefore conclude that defense counsel forfeited the misconduct claim.

IV

THE SUFFICIENCY OF THE EVIDENCE OF INTENT TO COMMIT THEFT

FOR PURPOSES OF THE BURGLARY CONVICTION

Defendant contends that there is insufficient evidence that he intended to commit a theft to support his conviction for burglary.

"'[W]hen a defendant challenges the sufficiency of the evidence, "'[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" [Citations.] . . .

15

"Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]" [Citation.] We "'"presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' [Citation.]" [Citation.]' [Citation.]" (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069.)

Burglary consists of entering a house or other specified structure "with intent to commit . . . larceny or any felony . . . ." (Pen. Code, § 459.) In this case, the jury was instructed that, one of the elements of the burglary count was that "[w]hen [defendant] entered a building, he intended to commit theft."

Roy testified, however, that the men in his bedroom rummaged through his drawers and asked, "Where's the money?" Moreover, after the intruders left, $200 was missing from Roy's wallet; his cell phone and a gold chain were also missing. All the kitchen cabinets were open and $100 was missing from the kitchen. This was sufficient evidence of intent to commit theft. (*People v. Edwards* (2013) 57 Cal.4th 658, 719 [fact that bedroom was ransacked and jewelry was missing was sufficient to prove that defendant entered home with intent to commit theft].)

Defendant argues that none of the money was found in his possession. Presumably, however, his accomplices made off with it.

Defendant also argues that there is no evidence that he entered the house other than — as he testified — by Roy's invitation. Rosalba testified, however, that a kitchen window had been opened and the screen had been removed. Defendant argues that his

16

fingerprints were not on the window and no one saw him come in the window. To this, we might add that the window was four feet off the ground and nothing inside under the window appeared to be disturbed. None of this, however, makes it impossible for the window to have been the initial point of entry. Perhaps one of defendant's accomplices came in through the window, then opened the front door to let in the other two perpetrators. In any event, all of this is beside the point; even assuming defendant entered with Roy's invitation and consent, as long as he entered with the secret intent to commit theft, he is still guilty. (See *People v. Felix* (1994) 23 Cal.App.4th 1385, 1397-1398.)

We therefore conclude that the burglary conviction is supported by substantial evidence.

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

17