Filed 10/29/20  P. v. Smith CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYVAUGHN LEWIS SMITH,<br><br>    Defendant and Appellant. | A156741<br><br>(San Francisco County Super. Ct. No. SCN229129) |

Appellant Rayvaughn Lewis Smith (Appellant) appeals from the judgment entered following his conviction of assault with intent to commit a felony and other offenses.  He contends the trial court erred in excluding evidence proffered to impeach the victim's credibility.  The court did not abuse its discretion.

PROCEDURAL BACKGROUND

In May 2018, the San Francisco County District Attorney charged Appellant by information with assault with intent to commit a felony against a person under the age of 18 (Pen. Code, § 220, subd. (a)(2); count one);[1] child endangerment (§ 273a, subd. (a); count two); false imprisonment (§ 236; count

---

[1] All undesignated statutory references are to the Penal Code.

1

three); and giving false information to a police officer (§ 148.9, subd. (a); count four).

A jury found Appellant guilty as charged. In March 2019, the trial court sentenced Appellant to a prison term of five years on count one, stayed the sentences on counts two and three pursuant to section 654, and imposed a jail term on count four with credit for time served equal to the length of the term.

## FACTUAL BACKGROUND

According to the testimony at trial,[2] the charges arose out of an April 22, 2018 incident at a San Francisco parking structure. The victim, 16-year-old S.G., testified she and two female friends met up with Appellant at the parking structure. They drank and smoked marijuana until the victim's friends left. She stayed behind to finish the marijuana cigarette she was smoking. Afterwards, as S.G. and Appellant walked toward the exit, he pulled her into a corner. He started pulling down her pants and exposed his penis. S.G. said, "We not fittin to do all that" and pulled up her pants; Appellant punched her in the face. She continued to try to pull her pants up, and he punched her several more times. They continued to struggle, while Appellant insisted they have sex and tried to remove her pants.

A building concierge monitoring a surveillance camera testified she saw a couple struggling in the garage. She approached the area and heard a female voice saying "stop," and then called the police. A police officer testified he heard a man and woman screaming or arguing when he arrived on the scene. Appellant falsely identified himself and said S.G. was drunk and he was trying to take her home. S.G., whose face was red and swollen on

_____

[2] We summarize only *some* of the evidence admitted at trial, which is sufficient for resolution of the issues on appeal.

2

the left side, said Appellant had tried to rape her. During a custodial interrogation, Appellant initially denied any misconduct, but he admitted striking S.G. when the interrogating officer told him the parking structure had a surveillance camera.

Appellant testified S.G. called him on April 22, 2018, and asked him if he would sell her some marijuana. They flirted and talked about having sex. Appellant met up with S.G. and her friends and they walked into a parking structure to hang out. The group drank alcohol and the girls smoked marijuana. After 30 minutes to an hour, S.G.'s friends left. One said, "I'm going to leave you guys to do what you do," which Appellant understood to be a reference to sex. After S.G.'s friends left, he asked her, "Are you ready to do that?" and she responded, "Yes." They consensually kissed and touched each other sexually, but then S.G. said she was late getting home and did not want to have sex that night. Appellant admitted that, after further argument, he punched S.G. twice. He testified he hit S.G. because he was upset she had, as he described it, led him on. He never tried to have sex with her after he hit her.

## DISCUSSION

Appellant's sole claim on appeal is that the trial court abused its discretion by denying admission of proposed impeachment evidence—to wit, an incident during which S.G. allegedly tasered a fellow student approximately one month after the events underlying the charged offenses. The trial court did not abuse its discretion.

I.    *Background*

Before trial, Appellant sought to admit evidence of, as described by the trial court, a "juvenile [delinquency] matter [in which] the complaining witness is alleged to have brought a TASER to school and Tased a classmate."

3

The court expressed its understanding that the alleged basis for admissibility was to impeach S.G.'s credibility. The court stated, "this is a case where the primary charge is that the defendant assaulted the complaining witness. So what we're talking about, or what seems to be most at issue, is the credibility of the parties. It's going to be, it looks like, one person's word against another." Defense counsel confirmed that was one of the asserted bases for admissibility, but she argued the evidence was *also* admissible as character evidence of S.G.'s propensity for violence under Evidence Code section 1103. The argument was based on Appellant's assertion that S.G. pushed him during the incident. Defense counsel argued the evidence of the tasering would tend to prove S.G. was lying if she denied shoving Appellant. Defense counsel said they would need to call the victim of the tasering as a witness if S.G. denied the tasering.

The prosecutor argued the tasering evidence was a "fairly weak" attack on S.G.'s credibility, jurors would be confused about the relevance of the evidence, and, because the incident had not been adjudicated, admission of the evidence would require "a trial within a trial." Regarding the impeachment value of the evidence, the prosecutor argued the tasering incident was weak evidence of "moral turpitude" because S.G. acted out of anger after the victim "laughed at a racist joke that was made by one of his friends." The prosecutor continued, "the reason why assaults are considered moral turpitude is because it's a readiness to do evil [and] a disregard for other people. Here, she was prompted, emotionally, to act. It was unreasonable and illegal for her to do so, but it wasn't a random act of violence . . . ." Previously, the prosecutor had told the trial court that if the defense were permitted to present evidence of the tasering incident, the prosecution would ask its expert witness a series of questions to explain

4

S.G.'s behavior. The prosecutor argued, "it is quite common for those who have experienced this type of trauma who are still in a traumatic state to overreact to stressors and act in a way that they normally would not, but for the fact that they are still emotionally dealing with what happened to them initially." The prosecutor asserted that "probably a day" of the trial would be consumed addressing the tasering incident, while defense counsel argued the evidence would not consume much time.

The trial court excluded evidence of the tasering incident, stating, "I have very carefully weighed the probative value versus the prejudicial value of this evidence, and my ruling is that under Evidence Code Section 352, I'm going to exercise my discretion and exclude any evidence that the complaining witness Tased a fellow student at school." The court also made additional comments explaining why the defense counsel's character evidence theory failed, given that "this is not a self defense case."

II.    *Analysis*

At the outset, Appellant argues, "the trial court only considered the evidence for its use as propensity evidence. The court never conducted the separate and independent analysis of whether the evidence was admissible to impeach the complaining witness." Appellant concedes the propensity theory of admissibility was weak and does not assert error as to that theory on appeal. But Appellant argues the trial court erred in failing to consider the impeachment basis for admissibility. We disagree the record shows the court failed to consider that basis. The trial court articulated defense counsel's impeachment theory at the outset of the discussion, both counsel argued both theories of admissibility, and the court's Evidence Code section 352 reasoning applies on its face to both theories of admissibility. We will not presume that in making its ruling the trial court was only considering the evidence's

5

probative value as character evidence under Evidence Code section 1103. (*People v. Giordano* (2007) 42 Cal.4th 644, 666 ["On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' "]; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["we apply the general rule 'that a trial court is presumed to have been aware of and followed the applicable law.' "].)

Appellant also argues it was an abuse of discretion to exclude evidence of the tasering incident under Evidence Code section 352. Under that section, the trial court "in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Ibid.*) Appellant argues the tasering incident was probative on the issue of S.G.'s credibility as evidence of past misconduct. Under Evidence Code section 210, "relevant evidence" includes "evidence relevant to the credibility of a witness." It is also well established that " 'a witness' moral depravity of any kind has "some tendency in reason" [citation] to shake one's confidence in his honesty. . . . [¶] There is . . . some basis . . . for inferring that a person who has committed a crime which involves moral turpitude [even if dishonesty is not a necessary element] . . . is more likely to be dishonest than a witness about whom no such thing is known.' " (*People v. Wheeler* (1992) 4 Cal.4th 284, 295 (*Wheeler*).)

The prior misconduct in the present case resulted in a misdemeanor juvenile proceeding, but the inference that "[m]isconduct involving moral turpitude may suggest a willingness to lie . . . is not limited to conduct which resulted in a felony conviction." (*Wheeler*, *supra*, 4 Cal.4th at pp. 295–296;

6

see also *People v. Hall* (2018) 23 Cal.App.5th 576, 589 ["Misdemeanor misconduct involving moral turpitude may suggest a willingness to lie, which is relevant to the credibility of a witness or hearsay declarant."].) Nevertheless, "a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonesty than is a felony.  Moreover, impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present.  Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*Wheeler,* at pp. 296–297; accord *People v. Contreras* (2013) 58 Cal.4th 123, 157, fn. 24; *Hall*, at p. 589.)

At the outset, we observe that evidence of the tasering incident was only minimally probative regarding S.G.'s credibility.  Although it does not appear the trial court concluded the incident involved *no* moral turpitude,[3] Appellant does not argue S.G.'s conduct involved any actual dishonesty. Instead, any relevance was based on the incident's tendency to show a " 'general readiness to do evil.' " (*People v. Castro* (1985) 38 Cal.3d 301, 315.) Prior misconduct that is " 'assaultive in nature' " does " 'not weigh as heavily in the balance favoring admissibility' " as misconduct involving " 'dishonesty or some other lack of integrity.' " (*Ibid.*)  Although the tasering incident appears to reflect some readiness to use violence, respondent observes S.G.

---

[3] The determination whether conduct involves moral turpitude is a legal question.  (*People v. Gray* (2007) 158 Cal.App.4th 635, 640.)  The trial court's exclusion of the evidence under Evidence Code section 352 suggests the court either determined or assumed for purposes of its analysis that the conduct involved moral turpitude and, therefore, had at least some minimal relevance.

was provoked because the victim laughed at a racist joke, and the prosecutor told the trial court its expert was prepared to testify the assault on April 22, 2018 increased the likelihood that S.G. would act out in violent ways.[4] The trial court could reasonably have concluded the already extremely weak impeachment value of the tasering incident was furthered diminished by those circumstances.

As respondent argues, admission of evidence of the tasering incident also risked undue prejudice. First, the connection between the incident and S.G.'s credibility was so tenuous that the trial court reasonably could have been concerned that the jury would be confused about the reason for admission of the evidence of the incident. Second, given the lack of a clear connection to S.G.'s credibility, there was a risk the main effect of the evidence would be to make the jury hostile to S.G. Finally, the trial court could reasonably have found admission of evidence of the tasering incident risked undue consumption of time. Although Appellant argued below and on appeal that presentation of evidence regarding the incident would not require substantial time, the prosecutor told the trial court it would present rebuttal witnesses and also ask its expert witness about the incident. The trial court reasonably could have concluded admission of the evidence would result in a not insignificant distraction for evidence of almost no legitimate probative value.

---

[4] Appellant argues the tasering incident was particularly probative of S.G.'s credibility because it occurred only a month after the underlying events. But the expected expert testimony actually made the proximity to the assault a factor that reasonably could be viewed as diminishing the probative value of the tasering.

The trial court did not abuse its discretion in excluding evidence of the tasering incident under Evidence Code section 352.[5]

## DISPOSITION

The judgment is affirmed.

---

[5] Appellant also contends exclusion of evidence of the tasering incident violated his federal constitutional right of confrontation. However, "[t]he federal Constitution's confrontation right is not absolute; it leaves room for trial courts to impose reasonable limits on a defense counsel's cross-examination of a witness." (*People v. Sapp* (2003) 31 Cal.4th 240, 290.) Prohibiting cross-examination on this one point of marginal relevance did not violate Appellant's right of confrontation.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BURNS, J.

(A156741)

10